IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

PAULA A. ABEL, )
)
        Plaintiff, )
)
v. ) Case No. CIV-17-011-KEW
)
COMMISSIONER OF THE SOCIAL )
SECURITY ADMINISTRATION, )
)
        Defendant. )

**OPINION AND ORDER**

Plaintiff Paula A. Abel (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and the case REMANDED to Defendant for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 35 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant has worked in the past as a nurse's aide, sales clerk, and sandwich maker. Claimant alleges an inability to work beginning April 3, 2014 due to limitations resulting from epilepsy, blood clots, and a stroke.

### Procedural History

On April 22, 2014, Claimant protectively filed for

supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act.  Claimant's application was denied initially and upon reconsideration.   On August 5, 2015, Administrative Law Judge ("ALJ") Diedre O. Dexter conducted an administrative hearing in McAlester, Oklahoma.  The ALJ entered an unfavorable decision on October 6, 2015.  The Appeals Council denied review on November 22, 2016.  As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation.  She determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform work at less than a full range of sedentary level.

### Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to perform a proper determination at step four and step five; (2) failing to properly evaluate the opinion evidence; and (3) failing to perform a proper credibility analysis.

### Step Four and Five Analysis

In her decision, the ALJ found Claimant suffered from the

4

severe impairments of protein C deficiency with an episode of left lower extremity deep vein thrombosis in April of 2014. (Tr. 17). The ALJ determined Claimant retained the RFC to perform less than a full range of sedentary work. In so doing, she found Claimant could lift/carry, push/pull up to five pounds frequently and ten pounds occasionally; could sit for up to six hours out of an eight hour workday with the option to stand for ten minutes for every one hour of sitting without leaving the workstation. Claimant could stand and/or walk up to two hours in an eight hour workday with the option to use a medically prescribed cane for standing or walking for more than 15 minutes or for ambulating over uneven terrain. Claimant should never be exposed to unprotected heights, moving mechanical parts, or operating a motor vehicle. Claimant was able to perform simple, routine tasks. (Tr. 22).

After consultation with a vocational expert, the ALJ determined Claimant could perform the representative jobs of addresser, document preparer, and touchup film inspector, all of which the ALJ found existed in sufficient numbers in the national and regional economies. (Tr. 33). As a result, the ALJ concluded that Claimant was not under a disability from April 22, 2014 through the date of the decision. Id.

Claimant contends the ALJ erred at step five when she identified representative jobs Claimant could not perform under the

5

RFC established by the ALJ. Specifically, Claimant asserts that, according to the *Dictionary of Occupational Titles ("DOT")*, the identified jobs require a reasoning level of 3 (document preparer, *DOT* #249.587-018) and 2 (addresser, *DOT* #209.587–010 and touchup film inspector, *DOT* #726.684-050) when Claimant can only perform jobs at reasoning level 1.

The ALJ limited Claimant to "simple, routine tasks." (Tr. 22). Reasoning level 3 requires a claimant to have the ability t0 "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and d]eal with problems involving several concrete variables in or from standardized situations." Reasoning level 2 requires a claimant to "[a]pply commonsense understanding to carry out detailed but uninvolved written instructions. Deal with problems involving a few concrete variables in or from standardized situations." Both of these reasoning levels would appear to exceed the RFC limitation to "simple, routine tasks" which would necessarily entail simple instructions and not detailed instructions which are required for all of the representative jobs. *See*, McKinnon v. Astrue, 2010 WL 3190621, at 5 (D.Colo.); Allen v. Barnhart, 2003 WL 22159050, at 10 (N.D. Cal.). The conclusion of the ALJ that no conflict exists between the vocational expert's testimony and *DOT* would appear to

6

be in error. (Tr. 33). The responsibility to investigate any discrepancies between the vocational expert's testimony and the *DOT* lies squarely with the ALJ. Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999). Contrary to Defendant's argument that the jobs of addresser and touchup film inspector are within Claimant's reasoning level, the Tenth Circuit has stated that they have not ruled whether a limitation to simple, routine tasks limits one to simple instructions. *See* Paulek v. Colvin, 662 Fed.Appx. 588, 594 (10th Cir. 2016). On remand, the ALJ shall explore and explain the apparent conflict between his RFC limitations, the *DOT*, and the testimony of the vocational expert.

Claimant also challenges whether the representative jobs exist in sufficient numbers in Oklahoma. There are 290 addresser jobs in Oklahoma and 380 touchup film inspector jobs in this State. The multi-factor analysis for assessing whether a job exists in sufficient numbers espoused in Trimiar v. Sullivan, 966 F.2d 1326 (10th Cir. 1992) is inapplicable in cases such as this one where the ALJ evaluated both the numbers in the regional and national economies. Raymond v. Astrue, 2009 WL 4799960, 4 n.2 (10th Cir.).

The Tenth Circuit in Trimiar did establish that "[t]his Circuit has never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number' and rejects the

opportunity to do so here." Trimiar at 1330. Rather, an ALJ must explicitly set forth a discussion of the factors identified above in determining that the number of jobs a claimant can do exist in significant numbers and an ALJ's finding is sufficient if the record supports a conclusion that the ALJ used a common sense approach in "weighing the statutory language as applied to a particular claimant's factual situation." Johnson v. Colvin, 2014 WL 4215557, 3 (W.D. Okla.). Since the jobs existed in sufficient numbers in the national economy, the analysis has been satisfied. *See*, Rogers v. Astrue, 2009 WL 368386, 4 (10th Cir.)(testimony by vocational expert of 11,000 hand packager jobs in the national economy could be relied upon by the ALJ as substantial evidence to support a finding of non-disability).

**Evaluation of Opinion Evidence**

Claimant contends the ALJ failed to proper assess the opinion of the psychological consultants identified in the record only as "JSG1, PHD" and Dr. William H. Farrell. The first consultant diagnosed Claimant with Chronic Venous Insufficiency, Organic Mental Disorder, and Borderline Intellectual Functioning, all severe in nature. (Tr. 111). Claimant was found to have cognitive functioning just below normal limits with extremely poor hygiene and fairly poor insight. She had difficulties with attention,

8

concentration, and memory. She also demonstrated moderate limitation in global functioning. Claimant was found to be "partially credible." (Tr. 112). The consultant found Claimant was markedly limited in the area of interacting appropriately with the general public and moderately limited in getting along with co-workers or peers without distracting them, maintaining socially appropriate behavior, and responding appropriately to changes in the work setting. (Tr. 116). He concluded that Claimant could perform simple tasks of 1-3 steps with routine supervision, could interact appropriately with co-workers and supervisors for incidental work purposes but should avoid contact with the public, could adapt to work setting and some forewarned changes in a usually stable work setting. (Tr. 117). Dr. Farrell's evaluation was congruent with the first evaluation. (Tr. 126-27).

The ALJ gave these opinions "very little weight" because the consultants' limitations were not supported by the evidence, noting that the limitation from public contact did not arise from a claim from Claimant. Also, the limitation to simple work was derived from the consultants improperly approaching the question of whether Claimant could perform work at the skill level rather than determining the skill level of work the findings indicate Claimant could perform. (Tr. 20).

The ALJ is required to evaluate every medical opinion. Salazar

9

v. Barnhart, 468 F.3d 615, 625-26 (10th Cir. 2006). Even non-treating consultative physician's opinions must be evaluated under the factors listed in 20 C.F.R. §§ 1527(d) and 416.927(d). Doyal v. Barnhart, 331 F.3d 758, 764 (10th Cir. 2003). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the . . . medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ adequately discussed the basis for the reduced weight given to the consultants' opinions. Many of their conclusions appear to have no foundation in the treatment or examining record. This Court finds no error in the ALJ's analysis of the opinion evidence.

### Credibility Determination

Claimant asserts the ALJ's credibility analysis was lacking. The ALJ found no evidence of a learning disorder despite her borderline intellectual functioning, which she determined caused no more than a minimal limitation because her IQ score was just below normal. The ALJ also found a claimed stroke never occurred. (Tr. 21). Interestingly, despite evidence of left side weakness and the required use of a cane, a diagnosis of a stroke is not apparent in the record. (Tr. 22, 26-27). The ALJ also found Claimant was non-compliant with her treatment. But she also recognized that this was due, at least in part, to her financial condition. (Tr. 26).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

11

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

Generally, the ALJ's credibility determination is supported by substantial evidence. However, she should explore and take into consideration Claimant's financial condition in assessing whether she was compliant with treatment.

## Conclusion

The decision of the Commissioner is not supported by

substantial evidence and the correct legal standards were not applied.  Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the case is REMANDED to Defendant for further proceedings consistent with this Opinion and Order**.

IT IS SO ORDERED this 28th day of September, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE